FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHWESTERN DIVISION

97 JUL -9  PM 3:49

U.S. DISTRICT COURT
N.D. OF ALABAMA

ELEANOR N. ALLEN,                    ]
                                     ]
        Plaintiff(s),                ]
                                     ]
    vs.                              ]    CV-96-N-1285-NE
                                     ]
ROBERT E. RUBIN, SECRETARY           ]
OF THE TREASURY,                     ]
                                     ]    ENTERED
        Defendant(s).                ]
                                          JUL  9 1997

## Memorandum of Opinion

## I.    Background.

        Eleanor Allen, ("Allen" or "Ms. Allen") an employee of the United States Treasury

Department, Internal Revenue Service (the "IRS"), brings this employment discrimination

action against the Secretary of the Treasury. She charges one count, with numerous

aspects, of gender and age discrimination under Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e *et seq.* The defendant has moved to dismiss as to some of the incidents

made the basis of the claim or, alternatively, for partial summary judgment. Because

matters outside the pleadings were presented to, and not excluded by this court, the

motion will be treated as one for partial summary judgment pursuant to Rules 12(b) and 56,

Fed. R. Civ. P. For the reasons stated herein, the motion will be granted in part and denied

in part.

Ms. Allen, a group manager with the Huntsville Office of the IRS, included the

following allegations in her complaint:[1]

8.  Plaintiff received a "PMRS" appraisal in 1994 of "fully successful", a decline from her 1993 appraisal of "distinguished", and was denied her 1994 PMRS award. One hundred percent (100%) of the white male managers in her division received an award. Plaintiff had not been counseled about any decline in her performance, as required by IRS "OPM" regulation. Her progress review in 1994 was similar to, if not better than, the review in 1993.

9.  As a female manager, Plaintiff has been continuously criticized by superiors for giving high performance ratings. Male managers who had given similar percentage or higher percentage awards were not criticized.

10. During 1990, Plaintiff was passed over for a GS-13 position in Birmingham, Alabama, which was left open for a male with much less experience than the Plaintiff. This male was selected from among four candidates, three of which (sic) were female. Subsequently, Plaintiff was unable to compete for a GS-14 position in 1992.

11. The supervisors of the Plaintiff have consistently given preferential assignments, which include more responsibilities and opportunities for career advancement, to males rather than females.

12. During management meetings, the male supervisors organizing the meetings would not permit the only two female managers, including Plaintiff, to be involved in the meetings to the same degree as their male counterpoints and they provided the females with separate and inferior hotel accomodations during the meetings. At one meeting in 1990, a remark was made to Plaintiff and the other female manager about Plaintiff's role in "cooking dinner".

13. Plaintiff has been continuously required to compete for any lateral transfer desired, while male employees have no such requirement.

---

[1] For the sake of simplicity, these allegations are quoted verbatim from the complaint. Numbers refer to the paragraph numbers of that complaint.

14.     The Plaintiff has regularly attended Equal Employment Opportunity
        training sessions and has noted that her male counterparts have failed
        to regularly attend or stay for the full duration of any given session.

15.     During the period of the Plaintiff's employment with the IRS, she has
        noted that at least one male employee was permitted a lateral transfer
        because he did not wish to work for a woman supervisor. As noted
        previously, the Plaintiff has been required to compete for lateral
        transfers.

16.     During the period of the Plaintiff's employment with the Defendant,
        management has criticized the performance of the Plaintiff's group,
        despite the fact that the group was meeting all assigned goals. Male
        managers with groups operating at a similar or lower performance
        level were not harassed in such a manner.

17.     On November 7, 1995, Plaintiff discovered that a meeting had been
        held in Huntsville by male Revenue Officers in order to receive
        assurance from the Field Branch Chief and Division Chief that Plaintiff
        would never become the manager of the Huntsville office. Two of the
        men who attended this meeting were selecting officials in a GS-13
        managerial package within two to four months after the meeting.
        Plaintiff was the highest ranking member of the candidates, which
        included three females. The selectee was the only male candidate
        and had the lowest ranking in the package.

18.     Throughout her employment with the IRS, the Plaintiff has suffered
        discriminatory employment actions, and breaches of IRS policy,
        committed by IRS management because of Plaintiff's gender.

*Complaint* at 2-3. The complaint further alleges that "[b]y reason of each and every act

alleged in paragraphs '1' through '18', any pattern, practice, custom, and usage of which

said acts are a part, Plaintiff, because of her sex, was denied terms and conditions of

employment commensurate with those offered to similarly situated men, in violation of Title

VII." *Complaint (Count One)* at 3.

3

## II.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). After the nonmovant has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.   Discussion.

A federal employee who claims illegal discrimination in the workplace must proceed under 42 U.S.C. 2000e-16(a). That section provides that all "personnel actions" affecting employees or applicants for employment in the United States Government "shall be made free from any discrimination based on race, color, religion, sex, or national origin." 42

4

U.S.C. § 2000e-16(a). The defendant contends that he is entitled to summary judgment on a number of the plaintiff's claims because she did not comply with administrative prerequisites to filing suit in federal court with regard to all of her allegations and that, with regard to some of the allegations in which she did complete administrative requirements, they do not amount to "personnel actions" as required under § 2000e-16. Lastly, the defendant argues that the plaintiff is not entitled to a jury trial on several of her claims and that punitive damages are not available against the government of the United States.

## A.    Compliance With Administrative Procedures.

"[W]hile 42 U.S.C. § 2000e-16(c) permits a federal employee to file suit in federal court alleging a violation of 42 U.S.C. § 2000e-16(a), administrative remedies must be fully exhausted first." Charles R. Richey, *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts*, 38.1 (2d ed. 1996); *see Brown v. General Services Administration*, 425 U.S. 820 (1976). Such a requirement "is not a technicality." *Grier v. Secretary of the Army*, 799 F.2d 721, 724 (11th Cir. 1986). The regulations state that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The defendant insists that "[i]n the present case, the **only** matters Ms. Allen timely raised to an EEO counselor involved (1) her 1994 'fully successful' PMRS appraisal, (2) criticism for giving high performance ratings in September 1994, (3) receiving less preferential collateral assignments than male employees since August 22, 1994, and (4) failure to require her male counterparts to

5

regularly complete and attend EEO training as she did in September 1994." *Movant's Initial Submission* at 7 (citations omitted).

It is undisputed that the plaintiff first contacted an EEO counselor on October 6, 1994, and that she did so again on November 21, 1995. The record reflects no other counseling sessions. The EEO Counseling Report for the October 6, 1994, meeting with Counselor Wanda Truesdale contains a section in which the complainant is instructed to "[p]rovide a brief description of complaint, summarizing actions which caused counseling to be sought and which complainant believes are discriminatory." *EEOC Counseling Report* at 1 (*see Declaration of Jerry Armstrong* [DOC. # 11] at 2). In this section, on an additional sheet has been typed:

> During the rating for FY 1994, the complainant was not advised of her progress. September 16, 1994, she received an evaluation that reflected an overall rating of fully successful, a decline from the prior year's rating of distinguished. This capped a series of discriminatory events including: lack of development opportunities; harassment, lack of respect and unprofessional behavior toward the complainant by the branch chief.

*Id.* at 3. Additionally, on that same report, in the area designated "Matter Causing Complaint or Issue" it is indicated that Ms. Allen complained about assignment of duties, awards, evaluations, appraisal, and merit pay, harassment, promotion, within grade increase, and working conditions. *Id.* Under "Basis or type of Discrimination," age and sex were indicated. *Id.* Lastly, the EEO Counselor's preliminary summary lists "[u]nfair PMRS appraisal" and "disparate treatment based on gender" as issues. *Id.* at 5.

On February 1, 1995, Ms. Truesdale sent the plaintiff a "Notice of Right to File a Discrimination Complaint." Such notice by its terms gave the plaintiff fifteen calendar days

6

in which to file a formal complaint of discrimination. *Notice of Right to File a*

*Discrimination Complaint* at 1 (*see Plaintiff's First Supplement to Complaint* at Tab A).

On February 8, 1995, the plaintiff filed her first formal complaint of discrimination with the

Department of the Treasury. Elizabeth Krielow, acting on behalf of Jerry Armstrong,

Director of the Treasury Department's Regional Complaints Center, summarized the

plaintiff's complaint as follows:

You alleged that you were subjected to discrimination by management based
on your age (5/27/46) and sex (female) when:

1.  on September 23, 1994, you received a "fully successful" rating
    on your fiscal year 1994 evaluation which contained little
    documentation to substantiate it;

2.  in March 1994, the Branch Chief responded to your evaluation
    bench mark request by correlating high performance ratings
    with statistical data in violation of P-120;

3.  you were questioned by the Branch Chief about giving the
    highest performance ratings out of the Collection Division in
    Birmingham, Alabama;

4.  in December 1990, you were not selected at the grade 13 for
    the Branch Chief position in Birmingham, Alabama;

5.  in 1994, you were denied the opportunity to work collateral
    assignments in the field branch;

6.  you were not invited to the entire management meeting held in
    Montgomery, Alabama and were not provided comparable
    reservations;

7.  you were required to compete for a lateral transfer from
    Birmingham, Alabama to Huntsville, Alabama;

8.  on or about August 20, 1993, you were denied assistance in
    finding resources to prepare for your management
    development; and

7

You also assert that you have been harassed based on your age (5/27/46) and sex (female) when:

9.     your Branch Chief and other white male managers in the Birmingham, Alabama office were not required to attend Equal Employment Opportunity sessions;

10.     insulting remarks were made to you by white male managers at a managers' meeting in Montgomery, Alabama;

11.     your Branch Chief expressed concern about your group's performance;

12.     your Branch Chief accused you of not properly reporting leave when you attended a going away party for a fellow employee;

13.     you were questioned about your work outside the office;

14.     in September 1994, your Branch Chief verbally abused you in front of your peers;

15.     when your Branch Chief accused you of an integrity violation by listening to a counselor's SAM messages;

16.     your decision to select a female for the SAT team was overruled by your Branch Chief; and

17.     your Branch Chief was not as courteous to you as he was to the white male employees.

*Krielow Letter* at 1-2 (*See* Tab B).[2]

Ms. Krielow also noted in her letter that because the EEO Counseling report indicated that Ms. Allen first contacted Ms. Truesdale, her EEO Counselor, on October 6, 1994, "[a]ll of the aforementioned issues, except issue 1, are untimely." *Id.* at 3. Ms. Krielow based her decision on the fact that the specific dates the plaintiff gave for the

---

[2] The plaintiff has not disputed that the Krielow letter accurately states her complaints.

events in issues 2, 4, and 8 occurred well before the 45 day period. *Id.* The plaintiff did not provide specific dates for the remaining issues and so Ms. Krielow said they "could not be automatically considered timely within the 45 day contact." *Id.* The letter then instructed the plaintiff to provide more specific information as to several of her complaints (including month, day and year of the actions, along with specific individuals who committed the alleged discriminatory acts), and to provide reasons and/or support for her failure to timely contact an EEO Counselor. *Id.*

In her response letter, Ms. Allen asked the department to "[p]lease waive and/or extend the 45 day limit on those actions as needed." *Allen Letter of June 4, 1995* at 2 (*see* Tab C). She rested her request for forbearance primarily on her contention that she "did not know and should not have known [she] had been discriminated against because [she was] female until September 23, 1994." *Id.* She also provided specific dates and names as she had been requested.

Mr. Armstrong responded to the plaintiff's submission with two letters dated June 28, 1995. In one of the letters, Mr. Armstrong informed the plaintiff that the following issues would be accepted for processing:

1.   Whether you were subjected to discrimination by management based on your age(5/27/46) or sex (female) when:

    a.   on September 23, 1994, you received a "fully successful" rating on your fiscal year 1994 evaluation which contained little documentation to substantiate it;

    b.   in September 1994, you were questioned by your branch Chief about giving the highest performance ratings out of the Collection Division in Birmingham, Alabama;

9

  c.  since August 22, 1994, you were denied the opportunity to work collateral assignments in the field branch;

  d.  since August 22, 1994, you have been denied assistance in finding resources to prepare for your management development.

2.  Whether you have been harassed based on your age (5/27/46) or sex (female) when:

  a.  in September 1994, your Branch Chief and other white male managers in the Birmingham, Alabama office were not required to attend Equal Employment Opportunity sessions;

  b.  in September 1994, you were questioned about your work outside the office;

  c.  in September 1994, your Branch Chief verbally abused you in front of your peers;

  d.  in Summer 1994, your Branch Chief accused you of an integrity violation by listening to a counselor's SAM messages;

  e.  on September 8, 1994, your Branch Chief was not as courteous or positive in his performance approach to you as he was to the white male employees.

*Armstrong Letter of June 28, 1995* at 1-2 (*see* Tab D).  In his other letter, Mr. Armstrong explained that the other issues were dismissed because he was persuaded that the facts should have been apparent to Ms. Allen "well in advance of the September 23, 1994, date" on which she claims she first became aware she had a claim of discrimination. *Armstrong Letter of June 28, 1995 (see* Tab E).

As mentioned above, the plaintiff sought EEO Counseling again on November 21, 1995. The counseling report for that session indicates that the plaintiff raised only a claim of sex discrimination in promotion. Specifically, the plaintiff alleged:

10

> I learned on November 7, 1995, that Bill Hall in his capacity as Chief, Collection of the Birmingham District held a meeting requested by bargaining unit employees in the Huntsville POD to discuss my career goals concerning advancement and possible transfer to the first line manager position in Huntsville. I was totally unaware of this meeting until the above date.
>
> At the meeting a discussion, without my knowledge or involvement, took place between the POD Collection employees (mostly male) and the Chief concerning my career. Specifically, the male employees did not want me selected or transferred to the position of group manager because I am a female. Chief Hall made a permanent decision concerning my career and informed the group. I was not advised of this decision. He assured them openly and to the entire group that I would never be the manager in Huntsville.

*EEO Counseling Report of November 21, 1995* at 4 (*see* Tab J). Because her counseling

session did not resolve her complaint, Ms. Allen filed her second formal complaint on

February 26, 1996. This complaint, like her counseling report, concerned the alleged

meeting concerning her promotion and five specific instances where Ms. Allen contends

she was discriminated against on the basis of her sex after that meeting. This complaint

was dismissed on April 11, 1996, by Martha Smith, acting for the director. Ms. Smith cited

untimeliness as the reason for dismissing the first alleged discriminatory act and failure to

present the claims to an EEO Counselor as the reason for dismissing the remaining claims.

Based on the available evidence and the complaint, the court is satisfied that Ms.

Allen raised her claims of discrimination with an EEO counselor. There remains, however,

the question whether they were raised in a timely fashion. The Treasury Department

determined that all of the allegations that now appear in the plaintiff's complaint were time

barred except those in paragraph 8, those in paragraph 9 occurring after September 1994,

those in paragraph 11 occurring after August 22, 1994, and those in paragraph 14 occurring

11

after September 1994. Mr. Rubin has moved for summary judgment on those claims that the Treasury Department previously found to be untimely.

The time limit for notifying an EEO counselor of an alleged discriminatory act "may be subject to equitable delay until the claimant knew or should have known the facts that would give rise to [a] claim." *Oaxaca v. Roscoe*, 641 F.2d 386, 388 (5th Cir. 1981) (*citing Chappell v. Emco Machine Works Co.*, 601 F.2d 1295, 1303 (5th Cir. 1979)); *Bickham v. Miller*, 584 F.2d 736 (5th Cir. 1978); *Reeb v. Economic Opportunity Atlanta, Inc.*, 516 F.2d 924 (5th Cir. 1975)). The point in time when a plaintiff knew or should have known of the facts giving rise to her claim presents a question of fact for the trial court. *See, e.g., Reeb*, 516 F.2d at 930. In this case, the plaintiff insists that she was not aware she had been a victim of discrimination until September 23, 1994. The plaintiff has written:

> I did not know and should not have known I had been discriminated against because I am a female until September 23, 1994. There was no way to identify this as discrimination under a protected category (gender) until an evaluating period ended after the female division chief was gone. On September 23, 1994, the motive of gender discrimination became crystal clear and, yes, upon reflection I wonder why I didn't recognize it all along.

*Allen Letter of June 4, 1995* at 2 (*see* Tab C). In addition, the plaintiff asserted that she mistakenly interpreted the complaint section of the 1994 EEO Managerial Training material. In particular, the plaintiff claims she "misinterpreted the term 'perpetuation of past discrimination.'" *Id.* at 3. Specifically she says she "interpreted that section to mean that a complaint timely filed based on an action within the 45 day period gave rise to other discriminatory practices in the past that were continuing to be perpetrated." *Id.* This last statement tends to show that the plaintiff realized, in early 1994, that there had been

12

previous acts of discrimination that she felt were not time barred. In addition, she stated in her letter:

> Of course I was aware that discrimination had occurred as it happened. However, I was a new manager from another district and was told by others that "outsiders" had to pay their dues meaning that they were not treated faily [sic] in the beginning. *I had my suspicions but was not convinced it was a gender issue.*

*Id.* at 2 (emphasis added). By this statement, Ms. Allen makes it clear that she not only knew discriminatory actions had been taken against her but that she also suspected that they were motivated by a discriminatory purpose. The department dismissed Ms. Allen's claims as untimely based substantially on these statements. Ms. Allen appealed that decision, claiming that the director "twists the meaning of my words, turning the statement of truth as I felt it into a non-existent admission or confession." *Allen Appeal* at 1 (*see* Tab G). Clearly, however, the director interpreted Ms. Allen's words in a reasonable way, one with which this court agrees. The only reasonable reading of the statement is that the plaintiff knew that "discrimination had occurred as it happened."

Ms. Allen also contends that she always complained of a "continuing violation." *Plaintiff's Brief* at 6. She thus argues that all of her claims are timely because they are part of a single "series of discriminatory events." *Id.* If Ms. Allen can show that the discrimination about which she complains is all part of one continuing violation, then as long as she contacted an EEO counselor within 45 days of the last occurrence of the discrimination, none of the events she complains of will be time barred. *See Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 658 (11th Cir. 1993) ("Where an employee charges an employer with continuously maintaining an illegal employment practice, he may file a

13

valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice.").

"The standard for determining whether an employment practice constitutes a continuing violation was set forth in *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241 (5th Cir. 1980)." *Beavers v. ACIPCO*, 975 F.2d 792, 796 (11th Cir. 1992) (footnote omitted). In *Gonzalez*, Firestone had a policy of awarding job opportunities on the basis of unvalidated standardized test scores. The plaintiff argued that this policy had a disparate impact on employees with Spanish surnames. The court held that the plaintiff's claim was not time barred because he failed to file a charge with the EEOC within the limitations period after the policy had been applied to deny his promotion. Specifically, the court wrote:

> When an employee charges an employer with continuously maintaining an illegal employment practice, he may file a valid charge of discrimination based upon that illegal practice until 180 days after the last occurrence of an instance of that practice. However, where the employer engaged in a discrete act of discrimination more than 180 days prior to the filing of a charge with the EEOC by the employee, allegations that the discriminatory act continues to adversely affect the employee or that the employer presently refuses to rectify its past violation will not satisfy the requirement of 42 U.S.C. § 2000e-5(e) that the plaintiff file his charge of discrimination within 180 days of the discriminatory act.

*Gonzalez*, 610 F.2d at 249. Accordingly, in determining whether a continuing violation may be present, the court must distinguish between the "'present consequence of a one-time violation,' which does not extend the limitations period, and the 'continuation of the violation into the present,' which does." *Beavers*, 975 F.2d at 796 (*citing Webb v. Indiana National Bank*, 931 F.2d 434, 438 (7th Cir. 1991)).

14

The term "continuing violation . . . implies that there is but one incessant violation and that the plaintiffs should be able to recover for the entire duration of the violation." *Knight v. Columbus*, 19 F.3d 579, 582 (11th Cir. 1994). The Eleventh Circuit's decision in *Calloway v. Partner's National Health Plans*, 986 F.2d 446 (11th Cir. 1993), is consistent with this view. In *Calloway*, the plaintiff, a black female, resigned from her position with the defendant after repeated attempts to negotiate a larger salary and to be promoted to several positions of increased responsibility. *Calloway*, 986 F.2d at 447. When she accepted the position, she had replaced a white female who had been paid more than she. *Id.* When she left, another white female was hired to replace her at a higher salary. *Id.*

Calloway did not file a charge with the EEOC within 180 days of when she was hired at the lower rate. *Id.* The District Court found that the defendant's discriminatory wage practice was the product of a discrete act and so her claim was time barred. *Id.* at 448. The Eleventh Circuit disagreed, holding that such race based discriminatory wage payments constituted a continuing violation of Title VII and allowed the plaintiff's claim to proceed. *Id.* at 449.

By contrast, the court in *Ross v. Buckeye Cellulose Corporation*, 980 F.2d 648 (11th Cir. 1993), held that the plaintiffs' claims for damages resulting from the present effects of an alleged discriminatory "pay and progression" ("P & P") system were time barred. *Ross*, 980 F.2d at 658. The court held that the "alleged discriminatory effects of the P & P System manifested themselves only on those periodic occasions when workers were evaluated for the purposes of assigning them career plans or modifying the plans previously assigned to them." *Id.* at 659.

15

In essence, the *Ross* court held that, unlike a continuing violation, the P & P system was not a plan that was put into effect and continued to discriminate. It discriminated at the moment when it was implemented, and only when it was implemented. It thus was not "one incessant violation" as the *Knight* court envisioned, but was a number of individual violations. In that sense, the plaintiffs' claims in *Ross* most closely resemble Ms. Allen's claims. Here, the plaintiff complains of several separate and distinct acts of alleged discrimination that occurred over a period of time. Each claim is based on a specific instance of conduct that has a discernable starting point and ending point. The plaintiff has admitted that she was aware of each of the discriminatory acts as they occurred and suspected gender discrimination was at the heart of all of them. However, she delayed in reporting the conduct to an EEO counselor until after the last of these events occurred on October 6, 1994. Accordingly, any events upon which the plaintiff's claims for age and gender discrimination are based and which occurred more than 45 days before October 6, 1994, are time barred. Accordingly, the motion will be granted with respect to the plaintiff's allegations as set out in paragraphs 10, 12, 13, 15, 16, and 17 of her complaint. In addition, all claims alleged in paragraphs 9, 11, and 14 that occurred before August 22, 1994, are time barred.

Although the complaint does not specifically allege that the defendant's conduct created a hostile work environment, in the plaintiff's submission in response to the defendant's motion, she contends that she does make such a claim. *Plaintiff's Brief* at 7. The plaintiff further argues that since she alleges a hostile work environment, all of her discrimination claims can be linked together as a continuing violation. *Id.* In support of

16

her argument she cites *Quillen v. American Tobacco Company*, 874 F. Supp. 1285, 1292 (M.D. Ala. 1995) (hostile work environment claim constitutes a continuing violation).

Generally two types of harassment are actionable under Title VII. The first type, commonly referred to as quid pro quo harassment, occurs when an employer makes a prohibited or discriminatory request of an individual as a condition for a tangible job benefit. *See* Charles R. Richey, *Manual on Employment Discrimination and Civil Rights Actions in the Federal Courts*, § 1:216 (2d ed. 1996) (*citing Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982)). "[H]arassment may also come in the form of . . . stereotyped and demeaning comments or actions that create a hostile working environment." Richey, *supra* at § 1:217 (*citing Harris v. Forklift Systems, Inc.*, 126 L. Ed. 2d 295, 114 S. Ct. 367 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 91 L. Ed. 2d 49, 106 S. Ct. 2399 (1986); *Bundy v. Jackson*, 641 F.2d 934 (D.C. Cir. 1981)). While actions under Title VII against private sector employers may be based on either type of harassment, it does not appear the same can be said for actions against the federal government.

In *Page v. Bolger*, 645 F.2d 227 (4th Cir. 1981), *cert. denied,* 454 U.S. 892 (1981), the Fourth Circuit, interpreting section 717 of Title VII (42 U.S.C. § 2000e-16), held:

Disparate treatment theory as it has emerged in application of [Section 717 of] Title VII . . . has consistently focused on the question whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating. This is the general level of decision we think contemplated by the term "personnel actions" in § 717. It is the level focused upon in the major Supreme Court decisions establishing and refining the substantive and procedural elements of individual disparate treatment theory. . . .

By this, we suggest no general test for defining those 'ultimate employment decisions' . . . By the same token, it is obvious to us that there

17

are many interlocutory or mediate decisions having no immediate effect upon employment conditions which were not intended to fall within the direct proscriptions of . . . Title VII. We hold here merely that among the latter are mediate decisions . . . that are simply steps in a process for making such obvious end-decisions as those to hire, to promote, etc.

*Page*, 645 F.2d at 233. In *Ferguson v. Veterans Administration*, 723 F.2d 871, 872 (11th Cir.), *cert. denied*, 469 U.S. 1072 (1984), the Eleventh Circuit expressly adopted the reasoning and conclusion of the *Page* court.[3] By definition, any harassment impacting an ultimate employment decision such as "hiring, granting leave, discharging, promoting, and compensating" could only be quid pro quo harassment. Consistent with *Page* and Eleventh Circuit precedent then, quid pro quo harassment is the only type of harassment actionable against the federal government. Therefore, the plaintiff cannot maintain a hostile work environment action in this case.

The Supreme Court's decision in *Meritor Savings Bank v. Vinson*, 477 U.S. 57 (1986) seems to support this conclusion. Until the *Meritor* ruling, the law was unclear regarding whether a plaintiff could bring a hostile work environment claim under Title VII. The Supreme Court clearly stated in *Meritor*, however, that such a claim is cognizable under the act. In that case, the plaintiff sued a private sector employer for violation of 42 U.S.C. § 2000e-2(a)(1). That section makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion,

---

[3] The plaintiff insists that the court also consider the definition of "personnel action" contained in 5 U.S.C. § 2302(a)(2)(A). However, that section is not specifically applicable to Title VII actions. In addition, this portion of the code was effective October 13, 1978, and so was available to the Eleventh Circuit, (and the Fourth Circuit) when interpreting the definition of "personnel action" under Title VII. Since these courts did not feel it was appropriate to use this definition, this court likewise will not use it.

18

sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The plaintiff in *Meritor* argued that this section impacts only "tangible loss" of "an economic character" and not "purely psychological aspects of the workplace environment." *Meritor*, 477 U.S. at 64 (*quoting Brief for Petitioner* at 30-31, 34). The Supreme Court rejected this argument, saying "the language of Title VII is not limited to 'economic' or 'tangible' discrimination. The phrase 'terms, conditions, or privileges of employment' evinces a congressional intent "'to strike at the entire spectrum of disparate treatment of men and women"' in employment. *Id.* (*quoting Los Angeles Depart. of Water and Power v. Manhart*, 435 U.S. 702, 707 n.13 (1978)). Based in part on this reasoning, the Court determined that a hostile work environment claim can be brought under Title VII.

Because the federal government is specifically excluded from the definition of "employer" as it is used in 42 U.S.C. § 2000e-2(a)(1), Ms. Allen may sue only under 42 U.S.C. § 2000e-16. Conspicuously absent from section 2000e-16 is a prohibition of discrimination with regard to "terms, conditions, and privileges" of employment. Thus, the reasoning for allowing a hostile work environment claim to be brought against a private sector employer is absent when the employer is the federal government. The court is therefore of the opinion that a hostile work environment claim cannot be maintained against the federal government. Accordingly, the court need not consider whether such a claim would amount to a continuing violation.

Paragraph 18 of the plaintiff's complaint contains no allegations of a specific act of discrimination or harassment. Without more, the court is unable to determine whether it

19

was timely raised to an EEO counselor. Accordingly, the motion will be granted as to the allegations in paragraph 18 of the complaint.

## B.   Adverse Personnel Action

The defendant next argues that, consistent with *Page*, the plaintiff's claims in paragraphs 9, 11, and 14 of her complaint are not "ultimate employment decisions." *Defendant's Brief* at 10.   The plaintiff contends in paragraph 9 that she "has been continuously criticized by supervisors for giving high performance ratings" while male managers engaging in similar conduct were not so criticized. *Complaint* at paragraph 9. "Criticism" is not tantamount to hiring, granting leave, discharging, promoting, and compensating; thus, consistent with *Page*, the allegations in paragraph 9 are due to be dismissed.

In paragraph 14, the plaintiff alleges that she has regularly attended EEO training while her male counterparts have failed to attend regularly. Such a requirement is not an "ultimate employment decision" consistent with *Page*.

The allegations in paragraph 11 of the complaint, however, are another matter. In that paragraph the plaintiff states that "[t]he supervisors of the Plaintiff have consistently given preferential assignments, which include more responsibilities and opportunities for career advancement, to males rather than females." *Complaint* at paragraph 11. The defendant has the burden of establishing that the allegations in this paragraph are inconsistent with *Page*. However, the court cannot say that, as a matter of law, such assignments do not constitute "ultimate employment decisions." The plaintiff has alleged that these actions affect her career advancement, which is akin to promotion -- one of the

20

decisions specifically enumerated in *Page*. The defendant addresses this allegation only briefly and has failed to demonstrate its inconsistency with *Page*. Accordingly, the allegations of this paragraph will not be dismissed.

### C.   Compensatory Damages and Jury Trial

As to the remaining allegations in paragraphs 8 and 11 of the plaintiff's complaint, none of the events complained of occurred before November 21, 1991, and the plaintiff is entitled to proceed to trial on these claims. However, the plaintiff may not obtain punitive damages from the federal government.   42 U.S.C. § 1981a(b)(1).   Thus, the punitive damages request will dismissed.

### IV.   Conclusion

The court having found that the defendant is entitled to judgment as a matter of law on all of the plaintiff's allegations except those contained in paragraphs 8 and those in paragraph 11 which occurred on and after August 22, 1994, the motion for summary judgment will be granted as to those claims.   Those claims will be dismissed with prejudice. In addition, the motion will be granted as to the plaintiff's claims for punitive damages. That claim also will be dismissed with prejudice.

Done, this ___8th___ of July, 1997.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

21